YARRUT, Judge.
This suit arises out of an accident in which an automobile driven by Joseph R. Lotz was struck and turned over by a vehicle being driven by Louis V. Gregory, an employee of Jamerson Hardware Store, at the intersection of Toulouse and North Hennessey Streets, New Orleans, Louisiana, on the morning of May 17, 1963. Joseph R. Lotz’ automobile was an Anglia, a compact foreign car, and was proceeding on Toulouse Street in the direction of the Lake. The vehicle being driven by Gregory was a Ford Ranchero, which was travelling on North Hennessey Street in the direction of Canal Street. The Gregory vehicle was approaching from the Lotz vehicle’s right. Joseph R. Lotz and his three guest passengers, Henry Marchand, Hervin Guidry, Jr. and George Lotz brought suit against Jamerson Hardware Store and its insurer, Hardware Mutual Casualty Company. Jamerson Hardware Store and its insurer filed a third-party demand against Joseph R. Lotz.
The Trial Judge found both drivers negligent, and rendered judgment in favor of Henry Marchand, Hervin Guidry, Jr. and George Lotz, against Jamerson Hardware Store and Hardware Mutual Casualty Company for the following amounts: $750.00 to Henry Marchand, $850.00 to Hervin Guid-ry, Jr. and $1,250.00 to George Lotz. He further rendered judgment in favor of Jamerson Hardware Store and Hardware *393 Mutual Casualty Company and against Joseph R. Lotz, third-party Defendant, for one-half of the total awards to the three guest passengers. From this judgment all Plaintiffs have appealed.
T , _ , , Joseph R. Lotz contends that he was not negligent and prays for an award against Defendants. The three guest passengers asked for an increase in their awards.
At the time of the trial, Louis V. Gregory could not be reached and did not testify. It is conceded, however, by Defendants that Gregory was negligent as he was exceeding the speed limit of twenty miles per hour, although the evidence did not reveal his exact rate of speed. Admittedly also, Mr. Gregory was approaching from Joseph R. Lotz’ right and both intersecting streets were, at the time, of equal dignity. Therefore, Joseph R. Lotz had no right to enter the intersection until he could safely complete the crossing without impeding traffic approaching from his right. Theunissen v. Guidry, 244 La. 631, 153 So.2d 869; Montalbano v. Hall, La.App., 108 So.2d 16; Deshotels v. Henry, La.App., 148 So.2d 148, affirmed Deshotels v. Southern Farm Bureau Casualty Insurance Company, 245 La. 23, 156 So.2d 465.
In a deposition. taken April 2, 1964, Joseph R. Lotz stated that he first saw the Gregory vehicle thirty feet away as he approached the intersection. However, at the trial, he testified that on June 11, 1964, he went to the scene of the accident to measure the distance between the intersection and the place where he had first observed the Gregory vehicle and found that it was 112 feet. It is significant that he made this measurement more than a year after the accident.
Joseph R. Lotz first testified that he had stopped several car spaces before he reached the intersection of North Hennessey Street to allow a truck to pass; that, at the intersection, he looked to his right and observed the Gregory vehicle but did not ascertain the speed at which it was travelling; that he would have been able to stop at the corner but thought he could make it across the intersection and shifted into second gear and proceeded to cross; and that he did not observe the Gregory vehicle again until the impact.
All Plaintiffs were mechanics and testified that Joseph R. Lotz’ Anglia automobile could only be accelerated very slowly.
In this regard, the Trial Judge, in his “Reasons for Judgment,” stated:
“The driver of the Anglia has testified that when he was about 100 feet away from the point of impact (there is some discrepancy between his testimony given in deposition and his testimony in the trial of the case, with reference to the number of feet distance), he saw the Ford Ranchero but that he ‘knew he had enough space to get across,’ and he therefore proceeded to cross the uncontrolled intersection. Obviously, he did not have ‘enough space’ otherwise he would not have been hit.
“Passengers in the Anglia, all mechanics, have testified that it is not possible to quickly accelerate ' the four cylinder Anglia and this fact must have been known to the driver, who is also a mechanic. The Court is therefore of the opinion that it was negligent for the driver of the Anglia to have entered the intersection when he clearly saw the Ford approaching, and knowing that he could not quickly accelerate the Anglia. All witnesses have further testified that the Anglia had come to a stop to let a truck go across the intersection, so that the Anglia had to be accelerated from a stopped position.
“For the reasons hereinabove set forth, the Court finds both, the driver of the Anglia and the driver of the Ford, equally negligent.”
In view of all the evidence, especially the fact that the Gregory vehicle had the right-of-way, we agree with the Trial *394 Judge that the negligence of Joseph R. Lotz was a proximate cause of the accident.
With regard to quantum, the Trial Judge stated that he was not allowing any special damages because it was not proven that any medical bills were paid. We will not discuss this point because Plaintiffs have not made it an issue on appeal. We will, therefore, now consider the awards for pain and suffering made to the three guest passengers.
It is significant with regard to the awards that it was stipulated that an independent witness would have testified that all three passengers, as well as Joseph R. Lotz, were in a jubilant mood after the impact and proceeded on their way to a restaurant, which was their original destination. None of them saw a doctor until the evening of the day of the accident.
First, we consider the $750.00 award to Henry Marchand to be adequate. Mr. Marchand suffered pain in his hand and shoulder and was seen on three occasions by Dr. Fred Hansen, who was not available to testify at the trial. Approximately five months later he, as well as the other guest passengers, on the advice of their attorney, consulted Dr. Joseph E. Dugas, Jr., a general surgeon, who found some residuals. But there is no evidence that Mr. Marchand received any treatment from Dr. Dugas or that he ever consulted another physician.
Hervin Guidry, Jr. consulted Dr. F. A. Wild, Jr., also a general surgeon, on the same evening of the accident. Dr. Wild diagnosed his inj'uries as that of multiple contusions and abrasions and possible strain of the ribs. Dr. Wild last saw Mr. Guidry on August 23, I960, three months after the accident and his prognosis was the patient would recover completely in three weeks.
Dr. Dugas also saw Mr. Guidry about five months after the accident, and testified that the patient complained of almost continuous headaches. However, when Dr. Wild was questioned concerning the headaches, he testified that they were not consistent with the injuries for which he treated the patient in connection with the accident. Dr. Dugas also found neck sprain. However, there is no evidence that Dr. Wild found such a sprain, although he examined the patient for the last time three months after the accident.
The testimony of the physician who examines and treats the injured party is entitled to much greater weight than that of a physician examining the party at a later date. Sullivan v. Birmingham Fire Insurance Company of Pa., La.App., 185 So.2d 336, and the cases cited therein. Therefore, we will accept Dr. Wild’s diagnosis.
There is no evidence that Mr. Guid-ry sought any medical attention after his one visit to Dr. Dugas. Under all the circumstances, we find the award of $850.00 to be adequate.
George Lotz was awarded $250.00 for lost wages and $1,000.00 for pain and suffering. Dr. Wild treated him for sprain muscle masses of the upper spine and neck, contusions of the head and back, a mild cerebral concussion and an injury to the right hand, the nature of which was not disclosed at the trial. However, Dr. Wild testified that George Lotz’ symptoms would continue for a maximum of three months. On cross-examination Dr. Wild further testified:
“Q. Doctor, your physical examination revealed a well-developed, well-nourished white adult workman, not appearing to be in distress or acutely ill on your May 17th examination, is that correct?
A. Yes.’’
Moreover, he testified he treated George Lotz only until May 23, six days after the accident.
Although, again, Dr. Dugas found some residuals five months later, he did not treat the patient nor does the evidence show that Mr. Lotz sought further treatment. *395 Under all the circumstances, we do not feel a $1,000.00 award is manifestly erroneous.
For the above reasons, the judgment appealed from is affirmed; all costs in both Courts are to be borne equally by Defendants, Jamerson Hardware Store and Hardware Mutual Casualty Company, and Joseph R. Lotz.
Affirmed.