312 So.2d 353 (1975)
TRI-STATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
TIDEWATER TRAILER MANUFACTURING COMPANY et al., Defendants-Appellants.
No. 12571.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1975.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for defendants-appellants.
McConnell & McConnell by Charles E. McConnell, Springhill, for plaintiff-appellee.
Before BOLIN, PRICE and DENNIS, JJ.
*354 DENNIS, Judge.
This is a suit by a workmen's compensation insurance carrier against the manufacturer of pulpwood loading equipment to recover benefits paid an employee injured while using the equipment.
Plaintiff's insured, E. W. Campbell and Sons, was engaged in the business of producing pulpwood. It purchased a Ford truck and defendant Tidewater equipped it for loading and hauling pulpwood by affixing a winch with a cable and manufacturing a pallet for it. The pallet was a detachable metal frame which could be loaded with several cords of pulpwood. The truck was placed in operation by E. W. Campbell and Sons on February 8, 1971. The accident occurred on February 10, 1971 as Rufus T. Heflin was attempting to pull the pallet, loaded with pulpwood, onto the rear of the truck with the winch and the cable. At the time of the accident, Heflin was in the cab of the truck and, as a result of the winch straining against the load, the front end of the truck had risen off the ground. The accident occurred when the winch cable broke causing the front end of the truck to fall to the ground, throwing Heflin about in the cab.
As a result of back injuries received by Heflin, and on behalf of E. W. Campbell and Sons, plaintiff paid him workmen's compensation and medical benefits. Pursuant to the Workmen's Compensation Act, plaintiff filed suit against Tidewater and its insurer to recover the amount paid alleging that defective manufacture and design of the pulpwood rig by Tidewater caused the injuries to Heflin. After a trial on the merits, the district court rendered judgment for plaintiff. Defendants appealed contending that the trial judge erred in rejecting their defense of contributory negligence. We affirm for the reasons hereinafter assigned.
The trial court found that the winch cable was either defective or of insufficient strength and that the pulpwood pallet was improperly constructed. Our view of the evidence supports these findings of ultimate fact. The front end of the pallet was not beveled or angled so that it could be pulled smoothly onto the truck bed. Nor was the frame on the truck bed spread at the rear end so that it could easily receive the pallet. Immediately before the accident the pallet had become lodged at the end of the truck bed, and continued operation of the winch lifted the front end of the truck into the air. The winch cable broke at a point about one foot away from the pallet allowing the truck to crash to the ground. The manufacturer's manager testified that a load of more than 50,000 pounds would damage the internal parts of the winch. Another witness for the defendants, an agent for the original manufacturer of the winch cable, testified that the cable was made to withstand a force in excess of 60,000 pounds without breaking. Yet, after the accident, it was determined that although the cable had broken the winch was unharmed. Accordingly, we find no manifest error in the determination of the trial court that defective manufacture or design of the pallet and the winch cable by Tidewater were causes in fact of the accident and Heflin's injuries.
Appellants argue, however, that Heflin was contributorily negligent in not shutting off the winch after the pallet lodged at the rear of the truck and before the cable broke. If so, Tri-State, as his subrogee, should be barred from recovery. La.R.S. 23:1101, 1102, 1162; Malone, Louisiana Workmen's Compensation Law and Practice § 367 (1951); Bell v. Carolina Casualty Insurance Company, 227 So.2d 171 (La.App., 2d Cir. 1969); Liberty Mutual Insurance Company v. Gillen Oil Field Service, Inc., 164 So.2d 695 (La.App., 3d Cir. 1964). It is well settled, however, that a party who relies upon contributory negligence bears the burden of proving the facts which justify application of this special defense. LeJeune v. State, 215 So.2d 150 (La.App., 3d Cir. 1968); Deshotels v. *355 Southern Farm Bureau Casualty Insurance Company, 245 La. 23, 156 So.2d 465 (1963); Jones v. Continental Casualty Company of Chicago, Illinois, 246 La. 921, 169 So.2d 50 (1964). Therefore, in this case, Tidewater, in order to avail itself of the defense, was required to prove that Heflin's conduct of which Tidewater complained was a cause in fact of the accident, and that it was a breach of a legal duty placed upon Heflin to protect against the particular risk from which the accident resulted. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Page v. Green, 306 So.2d 847 (La.App., 2d Cir. 1975); Robertson, Reason Versus Rule in Louisiana Tort Law, 34 La.Law Rev. 1 (1973).
The cable probably would not have parted when it did but for Heflin's failure to shut off the winch sooner. Therefore, his conduct complained of was a cause in fact of the accident. However, defendants failed to prove that he breached a legal duty in causing the accident.
The evidence indicates that it is common practice in the pulpwood industry for a driver to raise the front end of his truck in a loading operation. In fact, the pulpwood rig involved here had been designed and manufactured for such a maneuver. In this case the truck's front end rose higher than normal, but it was not proven that the elevation of the truck's front end to an abnormal height, in and of itself, caused the cable to break.
There is no evidence that Heflin was ever given any instructions as to the operation of the rig or its physical limitations. He was a new employee, having operated a pulpwood truck for only two days before the accident. The truck and loading apparatus were new also and had been placed in service by the employer two days before the accident. The pallet had lodged at the rear of the truck in the first few loading attempts and the manufacturer's manager was summoned to the job site to observe its imperfect operation. Heflin was apparently instructed to load the balky pallet with the manufacturer's manager standing a few feet away. There is no evidence that the manager of anyone else cautioned Heflin about placing stress on the cable should the pallet become lodged again.
Heflin testified without contradiction that he did not gun the engine of the truck, which operated the winch, but that he allowed it to pull the load at idling speed. He stated that he did not hear or observe anything which indicated to him the cable was about to break. Tidewater's manager testified that he shouted a warning when he realized that the load would not pull free and the truck had tilted to an extreme height. However, Heflin did not hear the alarm, which was given just before the truck crashed to the ground.
Under the circumstances, Heflin was justified in assuming that there was a margin of safety in the design and manufacture of the pulpwood rig which would allow some force to be applied to the lodged pallet. Furthermore, the silence of the manufacturer's manager as the winching operation began reasonably could have indicated to Heflin that he was expected to forcibly dislodge the pallet and pull it aboard the truck. Because of his relative inexperience in loading pulpwood, it is no more probable than improbable that Heflin should have anticipated that the continued pulling of the winch at idling speed against a stationary load could break the cable. Furthermore, it was not proven that, in failing to turn off the winch before the cable broke, Heflin reacted slower than reasonable for an unseasoned operator.
We conclude that Heflin was under a legal duty to operate the pulpwood rig with reasonable care and within what reasonably appeared to be its margin of safety and that defendants failed to prove Heflin breached this duty. Therefore, Heflin was not negligent, and the trial court was correct in rejecting the defense of contributory *356 negligence. The judgment below is affirmed at the cost of the appellants.
Affirmed.
BOLIN, J., concurs with written reasons.
BOLIN, Judge (concurring).
I concur in affirming the judgment of the lower court. The only issue on appeal is whether defendant has borne the burden of proving plaintiff was contributorily negligent. The record does not support a finding of any negligence of fault on the part of plaintiff; consequently, the plea of contributory negligence is without merit. In reaching this conclusion I see no necessity in resorting to any theory or doctrine which tends to complicate an otherwise simple case.